IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Justin James Hinzo, | C/A No.: 1:23-3636-JFA-SVH |
| Plaintiff, | |
| vs. | |
| South Carolina Department of Corrections (SCDC); Ms. Tonya James (Warden); Mr. Jayson Smith (Associate Warden); and Jennifer McDuffey (Associate Warden), | REPORT AND RECOMMENDATION |
| Defendants. | |

From February 13, 2023, to May 15, 2023, while incarceration at Kershaw Correctional Institution ("Kershaw"), Justin James Hinzo ("Plaintiff") did not receive outdoor recreation. Plaintiff sues the South Carolina Department of Corrections ("SCDC") and SCDC employees Tonya James ("James)", Jayson Smith ("Smith"), and Jennifer McDuffey ("McDuffey")[1] (collectively "Defendants"), pursuant to 42 U.S.C. § 1983, arguing that his constitutional rights have been violated.

This case is before the court on Defendants' motion for summary judgment. [ECF No. 32]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

---

[1] The Clerk is to correct the spelling of McDuffey's first name to Jennifer.

Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 33]. Having been fully briefed [ECF No. 46, 52], the motion is ripe for disposition. Also before the court is Plaintiff's cross motion for summary judgment. [ECF No. 47].[2]

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), the case has been referred to the undersigned for all pretrial proceedings. Having carefully considered the record, the undersigned recommends the district judge grant Defendants' motion for summary judgment and deny Plaintiff's cross motion for summary judgment.

I.  Factual Background

The primary factual issue in this case is not disputed. From February 13, 2023, to May 15, 2023, Plaintiff was housed in the restrictive housing unit ("RHU") at Kershaw and did not receive outdoor recreation time.

Kershaw's Associate Warden Smith attests that during this period Kershaw was experiencing staff shortages and that "security staff did the best it could to make outdoor recreation and exercise available as frequently as possible given the staffing availability." [ECF No. 32-2 ¶ 3]. Smith attests that it is difficult to provide RHU inmates outdoor recreation because it

---

[2] As noted by Defendants, Plaintiff's cross motion for summary judgment is untimely, as Plaintiff filed the motion on July 10, 2024, and the deadline to

2

usually involves a minimum of 5 officers "to restrain, remove, and search the inmate when the inmate leaves the cell and also performing a search when he returns to the cell, as well as an officer supervising in the recreations area, and escort officers," resulting in a "labor-intensive" and "taxing" process. *Id.*[3]

Smith also attests that outdoor exercise is not the only exercise opportunity available to an inmate. *Id.* ¶ 5. When in their individual cells, inmates are not restrained and have sufficient room to exercise, including sit-ups, push-ups, and other calisthenics. *Id.* Inmates are provided instructions for in-cell exercise and are not prohibited from exercising in their cells. *Id.*

Plaintiff was housed in RHU and had no outdoor recreation from February 13, 2023, until May 15, 2023, although the record indicates he was provided the opportunity on March 16, 2023—an opportunity he declined because he had a telephone call with his attorney. [*See* ECF No. 32-3 ¶ 4, ECF No. 47-1 at 9, ECF No. 1-1 at 8–9].

Defendants have submitted Plaintiff's medical records, and from January 2023 to May 2023 there is no indication that Plaintiff suffered

---

file motions was April 26, 2024. [*See* ECF No. 27].

[3] Plaintiff disputes Smith's assertion that five employees are required to provide recreation for RHU inmates, citing an email exchange where an SCDC lieutenant indicated four employees are necessary. [*See* ECF No. 47-1 at 7, *see also id.* at 8]. Defendants argue in response that the nonparty lieutenant's "knowledge . . . may not be imputed to the Defendants." [ECF No. 52 at 3]. The court need not resolve this dispute to resolve the pending motions for summary judgment.

physical injuries or medical issues attributable to a lack of outdoor opportunities. [*See* ECF No. 32-4]. On April 14, 2023, the records reflect that he voiced complaints of "a torn bicep and herniated disc in my back." *Id.* at 19.[4] Plaintiff's medical records reflect that, during the period at issue, he was on cell restrictions and work restrictions, including "bottom bunk only" and "no lifting" and "no climbing" restrictions. *Id.* at 8.

Roughly six months after the relevant period, Plaintiff provided a blood sample on November 15, 2023, and was diagnosed with a vitamin D insufficiency. [*See* ECF No. 52-1 at 24–30 (noting a vitamin D deficiency as "as a level of serum 25-OH vitamin D less than 20 ng/ml," a vitamin insufficiency as between 21 and 29 ng/ml, and Plaintiff's results as 24.7 ng/ml); *see also* ECF No. 47-1 at 2 (Plaintiff's evidence that he was prescribed vitamin D pills); *see also* ECF No. 52-1 at 10].[5]

II.   Discussion

   A.   Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[4] The record indicates Plaintiff had back surgery for lumbar disk disease in 2009 [ECF No. 52-1 at 6] and had "chronic rupture right biceps tendon," as recorded on January 11, 2023. [ECF No. 32-4 at 33].

[5] Plaintiff also argues that he advised medical on April 29, 2023, that during his time in RHU, he lost 20 pounds. [*See* ECF No. 47 at 2, ECF No. 47-1 at 3]. However, Plaintiff has failed to provide any evidence other than his

4

to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to

---

complaint, and his medical records do not support his argument.

5

allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

1. Eleventh Amendment Immunity

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. A civil action brought pursuant to 42 U.S.C. § 1983 provides a means to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States, but the statute is not, itself, a source of substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 imposes liability on any person who, under the color of state law, deprives another person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Doe v. Kidd*, 501 F.3d 348, 355 (4th Cir. 2007) (citing 42 U.S.C. § 1983). "Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

The Eleventh Amendment provides "[t]he Judicial power of the United

6

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has long held the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

A plaintiff "is not entitled to monetary damages under § 1983 against Defendants in their official capacities." *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (holding that Eleventh Amendment bars suits against non-consenting state, its agencies, and its officers acting in their official capacities)). However, suits for damages against state officials sued in their individual capacity are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.") (citation omitted).

To the extent Plaintiff sues Defendants in their official capacities, they are not subject to suit under § 1983. Additionally, SCDC does not constitute a

7

"person" for purposes of § 1983. Groups of individuals in a building do not qualify as a "person" who can act under color of state law for purposes of § 1983. *See Kane v. Beaufort Cty Sheriffs Dep't*, C/A No. 9:14-508-RMG, 2015 WL 404570, at *6 n.2 (D.S.C. Jan. 29, 2015) (noting that "[a] department is not a person subject to suit under § 1983").

Therefore, the undersigned recommends the district judge grant Defendants' motion for summary judgment as to claims for damages brought against SCDC and Defendants in their official capacities.[6]

2.   Conditions of Confinement

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the

---

[6] In his complaint, Plaintiff also requested injunctive relief but concedes [*see, e.g.*, ECF No. 46 at 9–10], as argued by Defendants, his request is moot, as he has been transferred from Kershaw to Lieber Correctional Institution. *See, e.g., Rendleman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there").

8

inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).

Additionally, under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff,

9

show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

The Fourth Circuit has held that "precedent from this and other circuits clearly establish that depriving inmates of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishment," but that "[e]xceptions may be made under exigent circumstances that necessitate constriction of these rights." *Mitchell v. Rice*, 954 F.2d 187, 193 (4th Cir. 1992).

To establish this Eighth Amendment claim, "[i]n considering the totality of the circumstances surrounding the denial of exercise, we look at the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities." *Lyles v. Stirling*, 844 F. App'x 651, 653 (4th Cir. 2021) (citations omitted)). However, "to establish an Eighth Amendment claim, not only must an inmate have suffered a serious deprivation, but he must also show a serious or significant physical or emotional injury resulting from the challenged

10

conditions, or substantial risk thereof." *Id.* (citation omitted)).

In *Lyles*, the Fourth Circuit reversed grant of summary judgment where evidence taken in light most favorable to the plaintiff indicated he was confined to his cell for more than 10 months, his cell was too small to do the exercises given to him, and he could not shower after exercising. *Id.* at 654.

Here, however, Plaintiff has provided no rebuttal evidence to Defendants' evidence that he had adequate opportunity for in-cell exercise, and the period in question—roughly 3 months—is considerably less than the period in *Lyles*. This case also stands in contrast to those cited by Plaintiff where an inmates complained of six months without out-of-cell exercise "in a cell the size of a phone booth," *see Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001), or where inmates complained of no out-of-cell exercise "between 11 and 25 months," except in a "oddly shaped" "designated exercise area," for one hour a day, five days a week. *Apodaca v. Raemisch*, 139 S. Ct. 5, 7 (2018) (statement of Sotomayor, J., respecting denial of certiorari)).

> As stated by this court:
>
> Ultimately, again considering the totality of the circumstances in this instance, the sunlight and "fresh air" limitations about which Plaintiff complains are not "the type of 'extreme deprivations [that] are required to make out a conditions-of-confinement claim.'" *Geissler v. Williams*, No. 1:18-CV-1897-DCN-SVH, 2019 WL 7882395, at *4 (D.S.C. Dec. 18, 2019), adopted, 2020 WL 502634 (D.S.C. Jan. 31, 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *see also Goss v. Kendell*, No. 2:20-CV-00949-MGL, 2022 WL 855549, at *3 (D.S.C. Mar. 23, 2022) (citing

11

> *Norbert v. Cty. And Cnty. Of San Francisco*, 10 F.4th 918, 929–34 (9th Cir. 2021)) (noting that the Constitution fails to mandate outdoor exercise when alternative avenues for exercise exist); *Hause v. Harris*, C/A No. 0:07-270-JFA-BM, 2008 WL 216651, at *8 (D.S.C. Jan. 23, 2008) (citation omitted) ("Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity"); *Burns v. Simmons*, No. 1:16-CV-1246 (LO/TCB), 2017 WL 4173719, at *2 (E.D. Va. Mar. 21, 2017) (noting that plaintiff's window sometimes being blocked such that he did not have a view of the outside or feel the sunlight did not violate contemporary notions of decency); *Joyce v. Thomas*, 2007 WL 1447902 at * 1 (W.D. Va. 2007) (three months without outside recreation time did not constitute an Eighth Amendment claim); *Richard v. Reed*, 49 F. Supp. 2d 485 (E.D. Va.), aff'd, 188 F.3d 503 (4th Cir. 1999) (dismissing Eighth Amendment claim alleging county jail officials deprived plaintiff of direct sunlight for over 100 days).

*Hair v. Kendell*, C/A No. 2:21-01345-TMC-MGB, 2022 WL 2951613, at *5 (D.S.C. June 14, 2022), report and recommendation adopted, C/A No. 2:21-1345-TMC, 2022 WL 2914478 (D.S.C. July 25, 2022), appeal dismissed, No. 22-6909, 2022 WL 18588068 (4th Cir. Nov. 23, 2022).

In response, Plaintiff notes SCDC policy mandates outdoor recreation 5 days a week for an hour a day. [*See, e.g.*, ECF No. 46 at 4]. However, a violation of an SCDC policy or rule, on its own, does not constitute a violation of constitutional rights. *See Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992); *Johnson v. S.C. Dep't of Corrs.*, C/A No. 3:06-02062-CMC-JRM, 2007 WL 904826, at *12 (D.S.C. Mar. 21, 2007) (holding plaintiff's allegation that defendants did not "follow their own policies or procedures, standing alone,

12

does not amount to a constitutional violation.").

Based on the foregoing, Plaintiff cannot raise a genuine issue of material fact as to whether he suffered a sufficiently serious deprivation of a basic human need. *See Farmer*, 511 U.S. at 834. Plaintiff also cannot show that Defendants acted with a "sufficiently culpable state of mind" in depriving him of any such need. *See id.* Further, Plaintiff has failed to establish that he "suffered serious or significant physical or mental injury as a result of" any restriction on outdoor exercise while in RHU. *Strickler*, 989 F.2d at 1381.[7]

Defendants are entitled to qualified immunity because Plaintiff has failed to demonstrate that Defendants violated his constitutional rights.[8]

---

[7] Although Plaintiff argues that his diagnosis of a Vitamin D insufficiency, that he characterizes without supporting evidence as "severe" [ECF No. 46 at 1–2, ECF No. 47 at 2], is a result of his lack of outdoor recreation some six months prior and also resulted in pain he mistakenly thought was his herniated disc, "Plaintiff's own unsubstantiated opinions as a layperson regarding the existence of the medical issues he claimed to have suffered from and their causal relation to his cell conditions are insufficient to prevent summary judgment." *Rouse v. Johnson*, C/A No. 8:20-02845-DCC-JDA, 2021 WL 1821982, at *5 (D.S.C. Mar. 12, 2021) (collecting cases), report and recommendation adopted, C/A No. 8:20-02845-DCC, 2021 WL 1711689 (D.S.C. Apr. 30, 2021).

[8] Plaintiff argues in his complaint that his Fourteenth Amendment rights also have been violated; however, for the reasons stated above, this claim fails as well, to the extent Plaintiff still asserts it. *See, e.g., Thorpe v. Clarke*, 37 F.4th 926, 942 (4th Cir. 2022) ("In our Circuit, prisoners retain a liberty interest in avoiding confinement conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, provided they can first establish that interest arise[s] from state

Accordingly, the undersigned recommends the district judge grant Defendants' motion for summary judgment as to Plaintiff's claims for violation of his constitutional rights on the conditions of his confinement.

### 3. Supervisory Liability

To the extent Plaintiff sues Defendants in their individual capacities as supervisors, his claims fail under 42 U.S.C. § 1983.

The doctrine of supervisory liability is generally inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). The Supreme Court explains that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Slakan v. Porter*, 737 F.2d 368, 372–74 (4th Cir. 1984) (finding officials may be held liable for the acts of their subordinates, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization).

---

policies or regulations.") (citations omitted)).

Plaintiff has failed to submit any evidence that Defendants were aware of or deliberately indifferent to any risk of injury to Plaintiff. Nor has Plaintiff demonstrated any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse").[9]

Accordingly, the undersigned recommends granting Defendants' motion for summary judgment on Plaintiff's claims against them in their individual capacities based on supervisory liability.[10]

III. Conclusion

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion for summary judgment [ECF No. 32] and

---

[9] To the extent that Plaintiff is suing McDuffie for her role in responding to his grievance, the Fourth Circuit has held "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily adopted by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see also Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994) ("plaintiff has no constitutionally protected interest in filing a Grievance"). In addition, the conduct of prison officials in responding to grievances does not state a constitutional claim. *See Dozier v. Sanders*, C/A No. 3:09-2309, 2011 WL 846704, at *12 (D.S.C. Feb. 4, 2011), report and recommendation adopted, C/A No. 3:09-2309-JMC, 2011 WL 846698 (D.S.C. Mar. 9, 2011), aff'd, 441 F. App'x 975 (4th Cir. 2011).

[10] For the same reasons stated above, the undersigned recommends the district judge deny Plaintiff's motion for summary judgment, in addition to its untimeliness.

15

deny Plaintiff's cross motion for summary judgment [ECF No. 47].

16

IT IS SO RECOMMENDED.

August 13, 2024  　　　　　　　　　　　　Shiva V. Hodges
Columbia, South Carolina　　　　　　　　United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).